JUAN HIGINIO FONT, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, SUSTITUTO, recurrido.

Núm. 1014.—*Sometido:* Enero 26, 1938. *Resuelto:* Marzo 17, 1938.

*Miguel Marcos Morales,* abogado del recurrente;

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Presentada en el Registro de la Propiedad de Guayama la escritura pública otorgada en junio 5, 1935, ante el notario Miguel Marcos Morales por virtud de la cual el márshal del distrito vendió a Juan Higinio Font una finca urbana situada en Cayey en la ejecución de la sentencia dictada por la Corte de Distrito de Guayama en el pleito que ante ella siguiera el dicho Juan Higinio Font contra Juan Bautista Arguinzonis en cobro de hipoteca por la vía ordinaria, el registrador se negó a inscribirla—

"por el motivo de que la venta en pública subasta de la finca en este caso se efectuó en un procedimiento de ejecución de hipoteca por la vía ordinaria, y en la primera subasta celebrada la finca fué vendida por una cantidad inferior a la fijada como valoración de la finca en la escritura de hipoteca para servir de tipo a la primera subasta, en contravención a lo dispuesto en el Artículo 127 de la Ley Hipotecaria, tal como quedó enmendado por la Ley núm. 69 de 2 de mayo de 1931, según el cual, la reducción en el precio mínimo fijado por las partes no puede tener lugar sino en sucesivas subastas, y tomada en su lugar anotación preventiva por el término legal . . ."

Esto es, el registrador sostiene que aunque una hipoteca puede ejecutarse no sólo por el procedimiento sumarísimo que fija la Ley Hipotecaria si que también por el ordinario que determina el Código de Enjuiciamiento Civil, a partir de la vigencia de la Ley núm. 69 de 1931 (Leyes de 1931, pág. 433), en cualquiera de dichos procedimientos que se siga, debe la venta del inmueble hipotecado sujetarse a las reglas prescritas por el artículo 127 de la Ley Hipotecaria tal como quedó por la misma enmendado.

No conforme el adquirente, interpuso contra la nota del registrador el presente recurso gubernativo.

 Que no es necesario recurrir al procedimiento especial sumarísimo que establece la Ley Hipotecaria para el cobro de una deuda garantizada con hipoteca y que el propio procedimiento especial quedó afectado por la ley relativa a las sentencias y la manera de satisfacerlas, de marzo 9, 1905, (Código de Enjuiciamiento Civil, ed. de 1933, pág. 122), es cuestión resuelta por esta propia Corte Suprema desde 1906. En el caso de *Giménez et al.* v. *Brenes,* 10 P.R.R. 128, se decidió, copiando del resumen:

"El Código de Enjuiciamiento Civil vigente regula en el orden común y ordinario, las acciones civiles, los juicios y los recursos que se establezcan, y sus procedimientos exigen una acción en ejercicio, partes contendientes: demandante y demandada, juicio, y sentencia final que ponga término al debate.

"El procedimiento sumario para el cobro de hipotecas es el resultado de un contrato entre partes, en el que se han convenido las prestaciones y se ha pactado también el medio de hacerlas efectivas, en caso de incumplimiento, y no siendo contrario al bien público, hay que sostenerlo, respetando así la voluntad consciente de las partes.

"El procedimiento sumario establecido en la Ley y Reglamento Hipotecarios, no es, ni por su naturaleza, ni por su fin, incompatible con el procedimiento ordinario del Código de Enjuiciamiento Civil, ni hay conflicto alguno entre ambos.

"El procedimiento especial para el cobro de créditos hipotecarios está vigente en su parte inicial, o sea, hasta el requerimiento inclusive, al deudor para el pago de la deuda, pero está derogado en la parte que podría llamarse *vía de apremio,* es decir, en lo que se refiere a la venta de la propiedad gravada, que debe sujetarse en un todo a la Ley de marzo 9, 1905, sobre el modo de satisfacer las sentencias."

Pasaron los años. La práctica establecida quedó consagrada por un buen número de decisiones posteriores a la de *Giménez et al.* v. *Brenes,* supra, hasta que en 1931, el legislador aprobó la referida Ley núm. 69 en que basa su nota el registrador y que en lo pertinente dice:

"Artículo 1.—El artículo 127 de la Ley Hipotecaria vigente queda enmendado en la forma siguiente:

" 'Artículo 127.—En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el registro de propiedad el pago de dicho préstamo.

" 'Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

" 'Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes.'

"Artículo 2.—Las disposiciones de la Ley de 9 de marzo de 1905, relativa a las sentencias y la manera de satisfacerlas, en cuanto se opongan a los preceptos del artículo 127 de la Ley Hipotecaria, según queda enmendado por el artículo anterior, y toda otra ley, o parte de ley, que esté en contradicción con la presente, quedan derogadas.''

No hay duda que la ley afecta a las ejecuciones de hipotecas cuando se sigue para ello el procedimiento fijado por la Ley Hipotecaria. La Ley de 9 de marzo de 1905 (Leyes de ese año, pág. 185, Comp. 5295–5303) relativa a las sentencias y la manera de satisfacerlas que se vino aplicando en sustitución del artículo 127 de la Ley Hipotecaria a virtud de la jurisprudencia establecida en el caso de *Giménez et al.* v. *Brenes,* supra, cesó de tener tal alcance a partir de la vigencia de la Ley núm. 69 de 1931. Desde entonces el procedimiento sumarísimo se rige íntegramente por las reglas de la Ley Hipotecaria. Pero ello no quiere decir que la Ley de 1905 relativa a las sentencias y la manera de satisfacerlas fuera derogada en su integridad. Sólo lo fué en cuanto se opusiera al artículo 127 de la Ley Hipotecaria. Quedó en todo su vigor como la ley que fija el procedimiento que debe seguirse para satisfacer *las sentencias* que se dicten en *juicios sobre ejecución de hipotecas,* juicios que no pueden ser otros que los que

se entablan siguiendo los preceptos generales del Código de Enjuiciamiento Civil, como lo fué el en que se dictó la sentencia para satisfacer la cual se vendió la casa hipotecada de que se trata en este caso.

El hecho de que al constituirse la hipoteca se haga constar el precio en que tasan la finca los contratantes para que sirva de tipo a la primera subasta, como sucedió en este caso, no quiere decir que el acreedor renuncie a su derecho a recurrir a la vía ordinaria para el cobro de su crédito prescindiendo de la garantía especial que el deudor constituyera a su favor o para ejecutar dicha garantía por la vía ordinaria. El requisito se consigna únicamente a los efectos de poder ejercitar el acreedor para cobrar su crédito el procedimiento sumarísimo de la Ley Hipotecaria. Como dijimos en *Emanuelli* v. *Corte,* 49 D.P.R. 775, 780, interpretando la repetida Ley núm. 69 de 1931:

"Esa ley estaba en vigor cuando se constituyó la hipoteca de que se trata y es terminante. Como hemos dicho exige en la escritura de constitución de hipoteca la tasación del inmueble hipotecado. Si no consta, no será por ello nulo el contrato, pero el acreedor no estará en condiciones de ejecutar su crédito por la vía sumarísima que fija la propia Ley Hipotecaria completada por su Reglamento."

La interpretación a que llegamos se sostiene por el caso de *Ceide* v. *Suárez,* 49 D.P.R. 649, 651. En él la corte, tomando en consideración la ley de que se trata, se expresó por medio de su Juez Asociado Sr. Wolf como sigue:

"La Ley Hipotecaria quizá sólo se refiere específicamente al procedimiento ejecutivo sumario allí definido, mas hemos resuelto en un número de casos que no obstante ello, un acreedor tiene derecho a iniciar un remedio ordinario en ejecución de hipoteca. *Montes de Oca* v. *Báez,* 23 D.P.R. 707; *Hermanitas de los Ancianos* v. *Piñero,* 45 D.P.R. 607. Lo resolvimos así no obstante las disposiciones positivas de la Ley Hipotecaria sobre el procedimiento sumario.

"Una hipoteca necesariamente es un contrato accesorio para garantizar el cumplimiento de una obligación principal, y por tanto el acreedor no tiene que descansar en la garantía dádale, sino que puede proceder a recobrar la deuda mediante una acción ordinaria,

según ocurre en este caso. Podemos repetir que un acreedor no tiene que fundarse en la garantía otorgádale.

"Sin embargo, los apelantes insisten en que hasta 1931 un acreedor podía elegir entre el procedimiento sumario de la Ley Hipotecaria y un pleito ordinario en ejecución de hipoteca. Los apelantes sostienen que todo esto fué modificado por la Ley Núm. 69, de 1931. Ahora bien, el efecto de esa ley fué restablecer el artículo 127 de la Ley Hipotecaria al estado que tenía antes de 1905, cuando el procedimiento conocido con el nombre de 'vía de apremio', fué alterado. Véanse *Giménez* v. *Brenes,* 10 D.P.R. 128, y *Porto Rico Leaf Tobacco* v. *Aldrey,* 13 D.P.R. 234. La lectura de algunos de los casos ya citados demostrará que nuestras razones para resolver que un pleito ordinario en ejecución de hipoteca podía ser iniciado, no dependieron de la supresión del artículo 127 de la Ley Hipotecaria."

De no decirse en la opinión "El contexto" (de la Ley núm. 69) "se refiere, a nuestro juicio, principalmente, al procedimiento sumario, o tal vez, en alguna forma, al pleito ordinario en ejecución de hipoteca, . . . . " la cuestión suscitada por el registrador en este caso habría quedado resuelta definitivamente en contra suya.

Despejaremos ahora toda duda e insistiendo en que el estudio de todas nuestras decisiones sobre la materia demuestra que "nuestras razones para resolver que un pleito ordinario en ejecución de hipoteca podía ser iniciado, no dependieron de la supresión del artículo 127 de la Ley Hipotecaria", resolvemos que el restablecimiento de dicho artículo sólo puede afectar y afecta al procedimiento especial sumarísimo regulado por la propia Ley Hipotecaria. El ordinario en ejecución de hipoteca sigue igual, debiendo satisfacerse la sentencia por los trámites de la ley de 1905. Los campos quedan de tal modo perfectamente deslindados.

Se concibe la garantía que al deudor otorga el artículo 127 de la Ley Hipotecaria, porque en el procedimiento sumarísimo no tiene dicho deudor oportunidad de defenderse. Se le requiere y si no paga dentro del término de ley se procede sin más trámite a la venta. Pero si el acreedor no recurre a ese procedimiento especial y va a un *juicio,* en el juicio tiene

·el deudor la oportunidad de alegar cuanto a su derecho conduzca. Depurados los hechos y la ley, el pleito se resuelve por sentencia, y es natural que la sentencia así dictada se ejecute como tal, esto es, de acuerdo con las reglas generales contenidas en la repetida "Ley relativa a las sentencias y la manera de satisfacerlas" de marzo 9, 1905.

*En tal virtud, debe declararse con lugar el recurso y en su consecuencia revocarse la nota recurrida, ordenándose al registrador que proceda a verificar la inscripción solicitada.*

El Juez Asociado Señor Córdova Dávila no intervino.