FEDERAL NATIONAL MORTGAGE ASSOCIATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE CAGUAS, SECCIÓN PRIMERA, recurrido.

*Número:* O-81-102     *Resuelto:* 4 de marzo de 1982

*Enrique Godínez Morales,* de *Montalvo, Franco, Quiles Mariani & Godínez,* abogado de la recurrente; el Registrador recurrido compareció *pro se.*

PER CURIAM:   El Registrador de la Sec. I de Caguas denegó la inscripción de la escritura Núm. 113 otorgada el 1° julio, 1980 ante el notario Sr. Pedro D. Quiles Mariani, sobre venta judicial obtenida en ejecución de hipoteca por la vía ordinaria, y su nota aduce como fundamento que no obstante haberse iniciado la acción civil en fecha anterior al 28 marzo, 1979 que es la de nuestra decisión en *Ponce Federal Savings* v. *Gómez,* 108 D.P.R. 585 (1979), el mandamiento de ejecución de sentencia se expidió pasado un año de la norma allí establecida, y no observada en la subasta, de guardar como precio mínimo el acordado como previa tasación del inmueble en la escritura de constitución del crédito, resultante en venta del inmueble en primera subasta por $22,546.64 cuando su previa tasación era de $25,480.

Durante 41 años, desde que fue emitida nuestra opinión en *Font* v. *Registrador,* 52 D.P.R. 850 (1938), los contra-

tantes en créditos hipotecarios estuvieron gobernados en sus negocios y transacciones por un estado de derecho que prescindía de todo tipo mínimo en la subasta cuando la realización del crédito se tramitaba por la vía civil ordinaria. Un tiempo razonable debía transcurrir para que los interesados se enteraran de que la decisión en *Ponce Federal Savings*, supra, cambió las reglas y que en adelante la previa tasación serviría de tipo mínimo compulsorio en la primera subasta, sin importar cuál fuere la acción civil utilizada para realizar el crédito. De darle vigencia inmediata a *Ponce Federal Savings*, supra, era factible la posibilidad de que su desconocimiento llevara a la efectuación de subastas nulas, con la inevitable lesión del derecho de propiedad de los licitadores; y en vez de posponer el vigor de la decisión por un período fijo de transición, se optó por el método de menor demora, de hacer la nueva norma aplicable a las acciones ordinarias que se iniciaren a partir de la fecha de su adopción, 28 marzo, 1979. La dilación excesiva de alguna que otra acción que escapa a la compulsoria celeridad de las Reglas de Procedimiento Civil y que según el Registrador le permitiría a un acreedor que interpuso demanda antes de aquella fecha, continuar aún al presente el abuso de una ejecución sin precio mínimo, es rara anomalía procesal que no sienta base de convicción.

El Registrador entra en una disquisición sobre el momento en que se inicia la etapa propiamente ejecutiva en la acción civil hipotecaria, y la cual transfiere de la radicación al momento en que recae sentencia y se ordena la venta del inmueble en pública subasta, lo que colocaría el presente caso dentro de la regla de *Ponce Federal Savings* v. *Gómez*, supra, mas no fue esa la disposición tomada por este Tribunal al decir que su norma cobraría eficacia en los procedimientos de ejecución de hipoteca por la vía ordinaria que *se inicien* a partir de la fecha de la decisión. Al así ordenar el Tribunal tenía presente la

diferencia en surgimiento de la etapa ejecutiva entre el sumario hipotecario y la acción civil, por lo que no hay que indagar más allá del lenguaje usado en la cláusula de vigencia, ni alterar con interpretación el mensaje trasmitido tanto a la clase profesional como a los contratantes.

Con estos antecedentes y fundamentos, *se revocará la calificación recurrida y se ordenará la inscripción del documento cuestionado.*